UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**BENJAMIN NEWMARK,**               Case No. 2:15-cv-00263-JES-CM

**Plaintiff,**

v.

**KEVIN RAMBOSK, in his duly elected capacity as Sheriff of Collier County, Florida,**

**Defendant.**
_____/

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOW COMES PLAINTIFF, Benjamin Newmark, by and through his undersigned counsel, who hereby opposes Defendant's Motion for Summary Judgment *(Doc. 37)* as there are issues of material fact which preclude summary judgment in favor of Defendant.

As an initial matter, Plaintiff notes he has filed his own motion for partial summary judgment with respect to six of Defendant's affirmative defenses and Plaintiff seeks permanent injunctive relief with respect to his religious accommodation claims. *Doc. 45.* Therefore, to the extent relevant, Plaintiff relies upon the statement of undisputed facts which appear in his motion. Moreover, the following list of *disputed* facts further supports why this Court should deny Defendant's motion for summary judgment.

### STATEMENT OF DISPUTED FACT

1. The Defendant does not have a policy on religious accommodation. *30(b)(6)Deposition at page 42, line 25; page 43 lines 1-5 and page 43, lines 1-5. (Doc. 46).*

2. The Sheriff did not and does not have a general accommodation policy, but only a disability accommodation policy. *30(b)(6) Deposition at page39, lines 22-25; page 40, lines 1-25; page 41, lines 1-25; page 42, lines 1-25; and page 43, lines 1-5.*

3. The Sheriff was not aware of any disruption of Mr. Newmark's work routine regarding Plaintiff's facial hair and aeration devices. *Sheriff Kevin Rambosk Deposition at page 30, lines14-17.*

4. Mr. Newmark never trained with a gas mask or aeration device. *Newmark Deposition at page 91, line 25, page 92, lines 1-4.*

5. Mr. Newmark filled out a United States Equal Employment Opportunity Commission (EEOC) questionnaire on March 17, 2010 based on hostile environment and failure to accommodate dating back to August 2009. *Doc. 47at pages 1-11.*

6. In response to the ACLU letter dated June 24, 2010, the Defendant, through Attorney Hedberg, stated that he did not feel it was necessary to meet since the Sheriff and Mr. Newmark had already engaged in the interactive practice. *Exhibit 1.*

7. Mr. Newmark did not voluntarily transfer to the civilian jail technician position. Chief Smith threatened him with either being fired or being a Jew. *See Newmark Deposition at page 160, lines 1-25; page 161, lines 1-5.*

8. Chief Smith was aware of Mr. Newmark's requests for accommodations. *Deposition of Greg Smith P. 18 Lines 1-25; P. 19 Lines 1 -25; P. 20 Lines 1-16.*

9. Mr. Newmark never gave contradictory testimony during his divorce proceedings. His testimony can be reconciled with his claims in this case. *.Newmark Deposition at page 123, lines 18-26 and page 124, lines 4-12.*

10. Mr. Newmark did request a waiver for the Court Holding Cell Officer position in 2012.

*Doc. 45-4.*

11. The request has to be in writing, but not on a specific form. *Darlyn Estes Deposition at page 42, lines 5-6.*

12. Upon receipt of the waiver, Human Resources is supposed to forward the waiver to the Human Resources discipline and appeals committee for review. *Id. at pg. 40, lines 5-23.*

13. Darlyn Estes, Head of Human Resources for Defendant, did not forward the waiver to the discipline and appeals committee, stating that she was not aware of Mr. Newmark submitting a waiver even though it was addressed to her. *Id. at pg. 41, lines 19-25.*[1]

14. Estes was, however, aware of Mr. Newmark's requests for religious accommodations before he applied for the Court Holding Cell Officer's position in 2012. *Id. at page 18; lines 8-13 and page 20, lines 9-11.*

15. Human Resources would be involved in a request to accommodate an individual to another position. *30(b)(6) Deposition at page. 74, lines 8-11.*

16. Mr. Newmark's 2012 memo was also a complaint of discrimination. *Doc. 45-4.*

17. Defendant violated its own policy and failed to turn the memo over to the Professional Responsibilities Bureau (PRB) for investigation. *Darlyn Estes Deposition at page 22, lines 1-13; Exhibit 2 (Newmark Personnel file); and 30(b)(6)Deposition at page 18, lines 10-25; page 19, lines 1-25; page 20, lines 1-25, and page 21, lines 1-6.*[2]

18. Defendant threatened to take away Mr. Newmark's accommodations in 2012. *Newmark Deposition at page 167, lines 24-25; page 168, lines 1-19; page 169, lines 12-22.*

---

[1] Plaintiff's counsel objected to the form of the question as compound, but the deponent answered anyways stating "not that I know of" when asked if Mr. Newmark submitted a waiver for the Court Holding Cell Officer and Youth Relations positions. Plaintiff withdraws the objection.

[2] Estes testified in deposition that she did not recall if she turned the memo over to the PRB for investigation, but said it would be in Mr. Newmark's personnel file if she did. There is no record of any PRB investigation regarding Mr. Newmark's 2012 complaint of discrimination in Mr. Newmark's personnel file. *Exhibit 2*. However, there are records of another PRB investigation in Mr. Newmark's personnel file regarding a separate incident not related to this case. *Id. at PMIO- 088-095.*

## SUMMARY JUDGMENT STANDARD

Summary Judgment should be reviewed, viewing the materials presented and drawing all factual inferences in a light most favorable to the non-moving party. *D'Angelo v. Conagra Foods, Inc.*, 422 F.3d 1220, 1225 (11th Cir. 2005) *quoting Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 975 (11th Cir. 2005). Summary judgment is properly granted when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P.* 56*(c).* [3]

### COUNT III RELIGIOUS ACCOMMODATION CERTIFIED OFFICER

#### A. Prima Facie Case

The prima facie case is not supposed to be onerous. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). Even though the Defendant cites to caselaw indicating that there must be an adverse action associated with a religious accommodation claim, "the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent. *See Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997) (declaring that, in cases where a plaintiff cannot establish a prima facie case, summary judgment only will be "appropriate where no other evidence of discrimination is present." (citations omitted)); *Silverman v. Bd. of Educ.,* 637 F.3d 729, 733 (7th Cir.2011) ("To avoid summary judgment ... the plaintiff must produce sufficient evidence, either direct or circumstantial, to create a triable question of intentional discrimination in the employer's decision.").

A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision maker." *Silverman,* 637 F.3d at 734 (citations and

---

[3] Plaintiff will respond as Defendant laid out its argument in its motion. *Doc. 37.*

internal quotation marks omitted); *see also James v. N.Y. Racing Ass'n,* 233 F.3d 149, 157 (2d Cir.2000) ("[T]he way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove—particularly discrimination.")." *Smith v. Lockheed-Martin Corp.,* 644 F.3d 1321, 1328 (11th Cir. 2011).

A plaintiff establishes a prima facie case of failure to accommodate if: (1) the employee's bona fide religious belief conflicts with an employment requirement; (2) employer has knowledge of the conflict; and (3) a *threat* or actual discriminatory treatment of the employee of the failure to comply with the religious requirements which conflicts with the religious belief. *See e.g., EEOC v. Townly Engineering & Manufacturing*, 859 F.2d 610, 615 (9th Cir. 1988), *cert. denied,* 489 U.S. 1077 (1989). *Accord Opuku-Boetang v. California*, 95 F.3d 1461, 71 (9th Cir. 1996) ; *Tiano v. Dillard's Dept. Stortes, Inc.* 139 F.3d 679, 681 (9th Cir. 1988)(emphasis added).

Plaintiff worked in Defendant's gang unit as a certified officer. Although Plaintiff has always been a member of the Jewish religion, beginning in about 2009, Plaintiff became more observant in his beliefs and practices and by 2012 followed the tenets of Hasidic Judaism which is one of the most Orthodox or conservative forms of Judaism requiring men to remain unshaven and cover their heads. *Newmark Deposition at page 45, lines 21-25.* In addition, it is prohibited to work on the Sabbath (Friday sundown- Saturday sundown) and on religious holidays like Yom Kippur (the holiest day in Judaism- the Jewish Day of Atonement) or Rosh Hashanah (Jewish New Year) *Id. at page 46, lines 1-8.*

In or about December 2009, Plaintiff requested four (4) religious based accommodations from Defendant: (1) to remain unshaven; (2) to wear a head covering or yarmulke;[4] (3) to take the Sabbath off (Friday sundown- Saturday sundown); and (4) to take religious holidays like Yom Kippur off. *Id. at page 62, lines 23-24; page 64, lines1-10.* In February 2010, Defendant denied most of the requested accommodations, but failed to mention religious holidays. *Doc. 45-1.* Defendant, however, did verbally tell Mr. Newmark that religious holidays off would be up to the supervisor. *Newmark Deposition at page 92, lines 12-14.* Thus, Plaintiff has met the first two prongs of the prima facie case.

In or about June 2010, Defendant again moved Mr. Newmark to a Road Patrol position, which accommodated the head covering accommodation request and the Sabbath accommodation request in that Mr. Newmark could wear a baseball cap and could have alternative Sabbaths off, using personal days off with approval for the Sabbaths he was scheduled to work. *Doc.45- 2.* However, Defendant still refused the request to remain unshaven and did not address the request for religious holidays off. *Id.*

In September 2010, Defendant through the Chief of Administration, who was aware of Mr. Newmark's requests for religious accommodations, forced Mr. Newmark to take a civilian jail technician position upon *threat* of termination. *See Newmark Deposition at page 160, lines 1-25; page 161, lines 1-5; Deposition of Greg Smith P. 18 Lines 1-25; P. 19 Lines 1 -25; P. 20 Lines 1-16.* Thus, Mr. Newmark meets the third prong of his prima facie case.

### B.  Undue Hardship

A Defendant can only deny a request for religious accommodations if it poses an undue hardship. Each request for an accommodation must be analyzed separately. *EEOC v. Ilona Hungry, Inc.,* 108 F.3d 1569 (7th Cir. 1996).

---

[4] Head covering included any article of clothing such as a hat that would cover Mr. Newmark's head.

It would not have been an undue hardship for the Sheriff to give Mr. Newmark Yom Kippur off because religious holidays are so few and far between. *EEOC v. Ilona Hungry, Inc.*, 108 F.3d 1569 (7th Cir. 1996) (reasonable accommodation for two Jewish employees to have Yom Kippur off) and *Pedersen v. Casey's General Store, Inc*., 978 F.Supp. 926 (D.Neb. 1997)(Fundamentalist Christian fired in violation of Title VII for refusing to work Easter Sunday). In *Ilona,* the Seventh Circuit upheld the findings of the district court that the Defendant "would have suffered at most a de minimis cost had it accommodated the requests at the time they were made—that is, approximately ten days to two weeks in advance of the Yom Kippur holiday." *Id.* at 1576.

Plaintiff agrees that the road patrol position addressed Mr. Newmark's requests to keep his head covered and his request to take the Sabbath off. *Doc.45-2.* However, the road patrol position did not accommodate Mr. Newmark's request to remain unshaven, *Id.,* and led to Chief Smith threatening his employment telling Mr Newmark for all intents and purposes that he was either going to be a deputy Sheriff and remain clean shaven or he was a *Jew* and would be forced into the civilian jail technician position. *Newmark Deposition at page 160, lines 1-25; page 161, lines 1-5.*

In fact, the Sheriff never should have denied the facial hair religious accommodation because it had no non discriminatory reason not to. First, an undue hardship defense cannot be supported by hypotheticals and must be supported by actual disruption of the work routine. *EEOC v. Townly Engineering & Manufacturing*, 859 F.2d 610, 615 (9th Cir. 1989); *Pedersen v. Casey's General Store, Inc*., 978 F.Supp. 926 (D.Neb. 1997) (decision maker cannot rely on hypotheticals).

An actual disruption of the work routine never happened here. Defendant claimed a beard *could* interfere with training for aeration devices. *Doc. 45- 1*. However, the Sheriff was not aware of any actual disruption to Mr. Newmark's work routine and Mr. Newmark never trained with gas masks or aeration devices. *Sheriff Kevin Rambosk Deposition at page 30, lines14-17; Newmark Deposition at page 91, line 25, page 92, lines 1-4.* So this was an improper basis of the denial of the requested accommodation.

Second, the uniformity argument also fails because other officers are/ were allowed to wear facial hair, like mustaches, including two disability accommodations of facial hair. *Doc. 45- 1; 30b(6)deposition at page 71, lines 16-25; page 72, lines 1-5. See Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359 (3rd Cir. 1999).

In that case, two Sunni Muslim police officers challenged the Newark Police Department's zero-tolerance, no-beard policy for officers that had not received a medical waiver. *Id.* at 361. Then-Judge Alito, writing for the court, found that the police department's policy "create[d] a categorical exemption for individuals with a secular objection but not for individuals with a religious objection." *Id.* at 365.  The court found that the medical exemption undermined the Department's interests in uniform appearance and officer morale. *Id.* at 366–67.[5]

Like in *Fraternal,* the Defendant's medical and mustache exemptions undermine its uniform appearance argument and Defendant violated Title VII by refusing Mr. Newmark's request to wear a beard. Thus summary judgment should be denied on this count.

### COUNT IV   Retaliation-Constructive Demotion

#### A.  Res Judicata

---

[5] The Third Circuit also rejected the Department's argument that it only granted medical exemptions because the ADA required it, because "Title VII . . . imposes an identical obligation on employers with respect to accommodating religion." *Id.* at 365.

Defendant claims that Mr. Newmark is barred under the doctrine of judicial estoppel from bringing a retaliation/constructive demotion claim because of testimony he provided in 2011 during his divorce proceedings. During those proceedings, Mr. Newmark testified that he needed to switch to the jail technician position because it was important to his wife and daughter that he spend the Sabbath with them and that he serve as a role model for their daughter by showing how Orthodox Judaism is properly observed. Defendant cites to passages from Mr. Newmark's prior testimony in which he acknowledges that his wife encouraged him to request a work schedule that would accommodate their family's religious needs, even if it meant making less money. *Doc. 37-3 at 30.* In the instant case, Mr. Newmark has maintained the consistent position that it was his wife who encouraged him to become more Orthodox and that she supported his decision, albeit unwillingly, to take the jail technician position if it meant he could comply with his religious requirements. *Id.; Newmark Deposition at page 190, lines 12-14*. Therefore, there is nothing inconsistent with Mr. Newmark's statements in both cases, and Defendant's judicial estoppel argument fails.

"The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks and citations omitted). As the Supreme Court has recognized, it is within a court's discretion whether to apply the doctrine, and its purpose is to "protect the integrity of the judicial process." *Id.* at 749-50 (internal quotation marks and citations omitted). *See also Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) ("Judicial estoppel is an equitable doctrine invoked at a court's discretion."). In exercising its discretion, a court should consider a non-exhaustive list of factors which include: (1) whether the party's comments are actually inconsistent; (2) whether the party

prevailed in the earlier proceeding such that allowing him to change positions in the later proceeding would create the perception that either the first or second court was misled; and (3) whether the party seeking judicial estoppel would be harmed if the request were denied. *New Hampshire v. Maine*, 532 U.S. at 751-52. In weighing these factors, courts focus carefully on the intent of the party against whom judicial estoppel is sought. *Burnes*, 291 F.3d at 1287-88.

Moreover, even courts that have judicially estopped a claim seeking monetary damages have still allowed a party to seek injunctive relief for that same claim. *Burnes*, 291 F.3d at 1289 (allowing plaintiff to proceed with injunctive relief in employment discrimination case despite being barred from recouping monetary damages for the same claim); *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1297 (11th Cir. 2003) (involving bankruptcy proceedings and finding that injunctive relief added no monetary value to bankruptcy estate); *Pace v. Hurst Boiler Welding Co.*, 2011 WL 97244 *4 (M.D. Ga. Jan. 12, 2011).

There is nothing in the record that supports Defendant's assertion that Mr. Newmark's prior testimony in his divorce proceedings was inconsistent with his allegations in the instant case, let alone that he is intentionally trying to misrepresent his position or mislead the court. The divorce testimony Defendant cites actually further supports Mr. Newmark's contention in this case that he has been making all along – he became more Orthodox at his wife's urging; he values his family and his religion plays a big role in that; he needed a religious accommodation to comply with the Sabbath; and that he was forced to take the jail technician position after being threatened by Chief Smith to make a choice between being a Deputy Sheriff or a Jew. After the meeting with Chief Smith, Newmark naturally called his wife to seek her advice, which demonstrates the close relationship he and his wife once had for which he should not now be penalized. *Newmark Deposition at 122, lines 18-25; page 123, lines 1-25, and page 124, lines 1-*

10

*24.*  When read together, his testimony during the divorce and his testimony in this case are actually consistent, rather than inconsistent.  Furthermore, testimony clearly shows the sincerity of Mr. Newmark's religious beliefs, the difficulty he faced in reconciling his religious and family needs with the strictures of the Sheriff's office, and that he begrudgingly accepted a demotion in order to meet the higher calling of his religious practice.  *Newmark Deposition at  pages 123, lines 18-26 and 124, lines 1-12. Doc. 45-2; Newmark Deposition at 122, lines 18-25; page 123, lines 1-25, and page 124, lines 1-24.* [6]

### B.  Prima Facie Case

To establish a claim of retaliation, a plaintiff must prove that he engaged in statutorily protected activity, suffered an adverse action, and there was some causal relation between the two events*. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2410-16, 165 L.Ed.2d 345 (2006).[7]

The causal element for a claim of retaliation can be proved by circumstantial evidence. The "causal link" element to require merely that the plaintiff establish that the protected activity and the adverse action were not wholly unrelated*. Goldsmith v. Bagby Elevator Co., Inc*., 513 F.3d 1261, 1278 (11th Cir. 2008). *See also Olmsted v. Taco Bell Corp.,* 141 F.3d 1457, 1460 (11th Cir.1998) (*quoting EEOC v. Reichhold Chems., Inc*., 988 F.2d 1564, 1571-72 (11th Cir.1993)) (internal quotation marks omitted).

"In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the

---

[6] Mr. Newmark did try to explain to Magistrate Freidman in his divorce proceeding about an ongoing separate legal matter where the Collier County Sheriff had refused to accommodate his religious beliefs though. *Doc. 37-3 at 30.*
[7] Even if the Defendant can show that there was no underlying discrimination, "to recover for retaliation the plaintiff 'need not prove the underlying claim of discrimination, which led to his protest', so long as he had a reasonable good faith belief that discrimination existed." *Gupta v. Florida Board of Regents*, 212 F.3d 517, 586 (11thCir 200), cert. denied, 121 S.Ct. 772 (2001)(citing *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994).

11

adverse…action." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (*citing Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir.1997)).

Close temporal proximity is also another way to show that complaints of discrimination and the adverse action are not entirely unrelated. Close temporal proximity is commonly satisfied where the adverse action occurred within three to four months of the protected activity. *See Clark County School District v. Breeden*, 532 U.S. 268, 273-74 (2001), citing with approval cases applying these time periods.

Here, Mr. Newmark: (1) requested religious accommodations and the Anti-Defamation League (ADL) and the American Civil Liberties Union (ACLU) complained on his behalf- the ACLU on June 24, 2010; (2) the threat to demote or be fired from Chief Smith came less than three (3) months after the ACLU complaint and Chief Smith was aware of Mr. Newmark's request for religious accommodations; and (3) on or about September 15, 2010 Defendant constructively demoted Mr. Newmark. *Newmark Deposition at 122, lines 18-25; page 123, lines 1-25, and page 124, lines 1-2; Deposition of Greg Smith P. 18 Lines 1-25; P. 19 Lines 1 -25; P. 20 Lines 1-16.* Thus Mr. Newmark has established a prima facie case of retaliation.

Defendant claims, however, that the threat to demote or be fired is not enough to rise to the level of a constructive discharge. Such contentions may not be raised at the prima facie stage of the circumstantial evidence model of proof. It must be raised at stage two, the Defendant's articulation of a legitimate nondiscriminatory reason for the adverse action or stage three, during the debate over whether the Defendant's reason is pretext.

The effort to smuggle later-stage issues into the prima facie case stage is so common an error that it has a name, "conflation." *See Benson v. Tocco*, 113 F.3d 1203, 1209 n.3 (11th Cir. 1997) ("the district court apparently conflated the third element of plaintiff's prima facie case . . .

with the showing of pretext necessary to rebut the employer's articulation"); *Johnson v. Arkansas State Police*, 10 F.3d 547, 551 (8th Cir. 1993) ("the district court improperly conflated the prima facie case with the ultimate issue").

Conflation is wrong because the prima facie case is meant to eliminate cases that fail to meet the most common and obvious defenses. The prima facie case requirement, therefore, "is not onerous." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253-4 (1981). It is meant to be easy. The fact-intensive debates must be saved for the pretext part of the case. This establishment of a prima facie case marks the point at which the defendant's credibility enters the case and the risk of loss looms large. Once a plaintiff has established a prima facie case and has put on sufficient evidence to allow a fact-finder to disbelieve a defendant's proffered explanation for its actions, that alone is enough to preclude entry of judgment as a matter of law. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1532 (11th Cir.1997), *cert. denied*, 522 U.S. 1045 (1998). Indeed, it is enough to sustain a verdict (or support a finding) for the plaintiff:

The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination. *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 147 (2000), *quoting, St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511 (1993). Any argument that the constructive demotion was not material or did not rise to the level of a constructive dismissal is better discussed in the pretext phase. *Vessels v. Atlanta Indep. Sch. Dist.*, 408 F.3d 763 (11th Cir. 2005).

### C.  Legitimate Non Discriminatory Reason/ Pretext

Defendant has put forth three (3) legitimate non-discriminatory reasons: (1) the incident with Chief Smith does not rise to the level of constructive discharge; (2) Mr. Newmark voluntarily quit; and (3) the civilian jail technician position was the only position to accommodate all of Mr. Newmark's religious accommodations.[8]

The " 'constructive-discharge doctrine' contemplates a situation in which an employer discriminates against an employee to the point such that his working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign; when the employee resigns in the face of such circumstances, Title VII treats that resignation as tantamount to an actual discharge." *Green v. Brennan*, 136 S. Ct. 1769 (2016).

Even a single incident can be enough to support a constructive discharge claim. *Levandos v. Stern Entertainment* 860F.2d 1227, 1232 (3d cir 1988 ). The Third Circuit reaffirmed in *Aman v. Cort Furniture Rental Corp* 85 F.3d 1074 (3d cir 1996) *Accord Bailey v. Binyon* 583 F.Supp. 923 (N.D.Ill. 1984).

In *Young v. Southwestern Savings & Loan Ass'n,* 509 F.2d 140 (5th Cir 1975)[,9] for example, an employee required to attend a work meeting with a religious observance quit because she knew she would be fired. The Fifth Circuit, our grandfather circuit, upheld this as a constructive discharge.

> "In these circumstances, when she could hope no longer that her absence at the meetings would not be noticed, she could reasonably infer that in one week, one month or two months, she would be discharged because of the conflict between her religious beliefs and company policy. Surely it would be too nice a distinction to say that Mrs. Young should have borne the considerable emotional discomfort of waiting to be fired instead of immediately terminating her association with Southwestern. This is precisely the situation in which the doctrine of

---

[8] As argued herein, Defendant wrongfully denied the beard accommodation request and the certified road patrol position would have been an appropriate accommodation.
[9] *Bonner v. Prichard,* 661 F.2d 1206 (11th Cir. 1981)(cases submitted for decision prior to October 1, 1981 from the Fifth Circuit are binding precedent on the Eleventh Circuit).

constructive discharge applies, a case in which an employee involuntarily resigns in order to escape intolerable and illegal employment requirements".

*Id. at* 144. Similarly, and arguably more severe here, Chief Smith threatened Mr. Newmark with termination or a civilian jail technician position- deputy and clean shaven or a Jew, so Mr. Newmark had no choice but to accept the demotion rather than bear the emotional discomfort of waiting to be fired – in one week, one month, or two months-for refusing to shave his beard in accordance with the tenets of his religion.

Moreover, there is a material issue of fact as to whether Mr. Newmark quit or whether the Sheriff  constructively demoted him." *See e.g., Goss v. Exxon Office Systems, Co.,* 747 F.2d 885, 887 (3d Cir.1984) (credibility determination of whether employee quit or was constructively discharged up to jury). As in *Goss, a*  reasonable fact finder could find that Mr. Newmark was forced to accept the demotion. .*Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505 (1986)(Summary Judgment will not lie if the dispute about a fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the nonmoving party). Thus, summary judgment should be denied on this count.

### Count I. Court  Holding Cell Officer's Position-Retaliation

Here, Mr. Newmark establishes a prima facie case of retaliation. (1) Mr. Newmark complained about discrimination in a May 2012 memorandum; (2) Defendant denied him the position; because (3) Defendant was aware of protected conduct and the action occurred in close temporal proximity of the complaint.

Defendant argues that Mr. Newmark was not qualified for the position in that he was not working as a certified officer in the jail at the time of application, but this is pretext for discrimination. Defendant had a waiver policy that allowed Mr. Newmark, who was otherwise qualified for the position, to seek a waiver, which he did in writing."*Doc. 45-4.* The waiver did

15

not have to be on a specific form. *Darlyn Estes Deposition at page 42, lines 5-6.* Human Resources was aware of the requests for religious accommodations, but did not follow policy and submit the waiver to the appropriate committee for review and consideration. *Id. at page 18, lines 8-13, page 19, lines 9-11, and page. 40, lines 5-23.*

An employer's failure to follow its own policies and procedures may be evidence of pretext. *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1024 & n.6 (8th Cir. 1998); *Morrison v. Booth*, 763 F.2d 1366, 1374 (11th Cir. 1985) ("Departures from normal procedures may be suggestive of discrimination"); *Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 644 (11th Cir. 1998) (same); *Rudin v. Lincoln Land Cmty.College*, 420 F.3d 712, 726 (7th Cir. 2005); *Timmerman v. U. S. Bank, N.A.,* 483 F.3d 1106,1119 (10th Cir. 2007).  A reasonable jury could find that Mr. Newmark's memorandum constituted a waiver under Defendant's policy and that Defendant denied him the position for retaliatory reasons by failing to submit the waiver for review. *Anderson, supra.* As such, summary judgment should be denied on this count.

Mr. Newmark's memorandum regarding the Court Holding Cell Officer's position was also a complaint of discrimination. *Doc. 45-4.* Defendant violated its own policy and failed to turn it over to the Professional Responsibilities Bureau (PRB) for investigation. *Darlyn Estes Deposition at page 22, lines 1-13; Exhibit 2 (Newmark Personnel file); and 30(b)(6)Deposition at page 18, lines 10-25; page 19, lines 1-25; page 20, lines 1-25, and page 21, lines 1-6.*

Courts have held that unfair or irregular investigations can be evidence of pretext. *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1159 (10th Cir. 2008*); Humphries v. CBOCS West, Inc*., 474 F.3d 387, 407 (7th Cir. 2007); and *Tisdale v. Federal Exp. Corp*., 415 F.3d 516, 529-30 (6thCir. 2005) (defendant's failure to collect relevant evidence was evidence of pretext). Here,

the Defendant failed to even investigate whether Mr. Newmark was being denied the position for a discriminatory reason which in and of itself is evidence of pretext.

It should be noted that protected activity, such as a complaint of discrimination, need not always be accompanied by "magic words" such as "discrimination"; or "religion". *Sitar v. Indiana DOT*, 344 F.3d 720, 727 (7th Cir. 2003) (employee need not use "magic words" such as "sex" or "gender discrimination" to invoke anti-retaliation protections); *Reynolds v. Golden Corral Corp.*, 106 F.Supp.2d 1243, 1253 (M.D.Ala. 1999), *citing Garcia-Paz v. Swift Textiles, Inc.*, 873 F.Supp. 547, 559-60 (D. Kan. 1995), *affirmed* 213 F.3d 1344 (11th Cir. 2000) ("The question, then, is not whether a formal accusation of discrimination is made but whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner").

Here, the memo was enough to put Defendant on notice of a potentially discriminatory act. A reasonable jury could find that Defendant's failure to investigate evidences Defendant's refusal to hire Mr. Newmark for the Court Holding Cell officer's position in retaliation for complaining about discrimination. *See Anderson, supra.*

### Count II-Jail Technician Duty to Accommodate

Defendant cites to a disparate treatment gender discrimination case in support of its position that it accommodated Mr. Newmark in the Jail Technician position. *Doc. 37 at 38.* However, this is a duty to accommodate claim.[10] Here, allegedly according to Defendant, the whole point of the civilian jail technician position was to accommodate all of Mr. Newmark's

---

[10] The prima facie case for a failure to accommodate religion is:(1) the employee's bona fide religious belief conflicts with an employment requirement; (2) employer has knowledge of the conflict; and (3) a *threat* or actual discriminatory treatment of the employee of the failure to comply with the religious requirements which conflicts with the religious belief. *See e.g., EEOC v. Townly Engineering & Manufacturing*, 859 F.2d 610, 615 (9th Cir. 1988), *cert. denied*, 489 U.S. 1077 (1989).

religious accommodations. *Doc. 37.* As such, Defendant was aware of Mr. Newmark's religious beliefs and the alleged conflicts in the certified officer's position.

Nevertheless, Defendant threatened to take away the beard and head covering accommodations in the civilian jail technician position. *Newmark Deposition at Newmark Deposition at page 168, lines 3-23.* Despite Defendant's contention to the contrary, and as discussed herein in relation to Count I, a threat of discriminatory treatment is enough to establish a prima facie case of failure to accommodate religious beliefs. Defendant has not offered any explanation for why maintaining Mr. Newmark's religious accommodations for the beard and head covering became an undue hardship on the Sheriff .

Alternatively, this could be looked at as retaliation. In May 2012, Mr. Newmark complained about not getting the Court Holding Cell Officer's position and by June 2012, he's threatened with removal of the beard and head covering accommodations. In the retaliation context, "adverse … actions … extend to any action which a reasonable employee would have found to be  materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 126 S.Ct. at 2415 (citations and internal quotation marks omitted).The Supreme Court  affirmed its holding in *Burlington* that adverse actions extend to any action which may dissuade a reasonable employee from supporting a complaint of discrimination. *Thompson v. North American Stainless, LP*, 200 U.S. 321 (2011).

Adverse actions could include such things as threats and intimidation or a change of schedule. For example, in *Burlington*, the Supreme Court found that suspension without pay, for which the employee was ultimately paid, was an adverse action and that a change of schedule could constitute an adverse action. 126 S.Ct. at 2415. In *Thompson*, the Supreme Court held that

termination of the employee's fiancé was an adverse action. In *Pennsylvania State Police v. Suders*, 124 S.Ct. 2342 (2004), the Supreme Court also recognized that constructive discharge is an adverse action.[11]

Thus in light of Chief Smith's threats to Mr. Newmark in the certified road patrol officer's position in 2010- Deputy Sheriff and unshaven or Jew-, an adverse action could include a threat to take away the beard and head covering accommodations. Defendant has not offered any legitimate non-discriminatory reason as to why it threatened to take away Mr. Newmark's religious accommodations in the civilian jail technician position.

Moreover, since the threat to take away accommodations is capable of repetition (as argued in Plaintiff's Partial Motion for Summary Judgment at *Doc. 45)*, it does not preclude injunctive relief in ordering the Sheriff to stop discriminating and enjoin him from taking away the accommodations in the civilian jail technician position.

## CONCLUSION

WHEREFORE, Plaintiff respectfully prays that this Honorable Court deny Defendant's Motion for Summary Judgment in its entirety.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment was served on all counsel of record via cm/ecf on this 13th day of July 2016.

Respectfully Submitted,

s/ *Adria Lynn Silva*
ADRIA LYNN SILVA (Trial Counsel)
Florida Bar No. 0137431
The Law Office of Adria Lynn Silva, L.L.C.
Post Office Box 770849

---

[11] Defendant cites to *Coles v. Postmaster General*, 2016 WL 2348679 (M.D.FLa.2016). However, the court denied Plaintiff's claims in part because she could not show she was threatened. *Id. at *3*.

Naples, Florida 34107-0849
514-4855 telephone
239-571-2855 cellular phone
AdriaLynnSilva@aol.com;
Adria@AdriaSilvaLaw.com
Cooperating Attorney for the American Civil
Liberties Union Foundation of Florida, Inc.

s/Nancy G. Abudu
Nancy Abudu (Fla. Bar No. 111881)
nabudu@aclufl.org
ACLU Foundation of Florida, Inc.
4500 Biscayne Blvd., Suite 340
Miami, FL 33137
Tel: 786-363-2700
Fax: 786-363-1448

S/ Douglas Wilson
Florida Bar No. 915947
The Wilson Law Firm
616 Sanctuary Rd.
Naples, Fl 34120
239-348-9191
239-245-9286 Fax
douglaswilson@earthlink.net
Cooperating Attorney for the American Civil
Liberties Union Foundation of Florida, Inc.